FILED _____ ENTERED
LODGED _____ RECEIVED

OCT 1 9 2007   LK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCO ZALDIVAR, on Behalf of Himself
and Others Similarly Situated,

                                   Plaintiff,

      v.

T-MOBILE USA, INC.,

                                   Defendant.

No. **C 07-1695**

CLASS ACTION COMPLAINT

**DEMAND FOR JURY TRIAL**



**07-CV-01695-CMP**

Plaintiff Marco Zaldivar, by and through his attorneys, bring this action on behalf of himself and all other persons similarly situated in the United States based on knowledge, information and belief formed after an inquiry reasonable under the circumstances, except to those allegations which pertain to the named Plaintiff or to his attorneys (which are alleged on personal knowledge), and hereby allege as follows:

## I.    NATURE OF ACTION

1.    Plaintiff Zaldivar is a current wireless telephone customer of the Defendant T-Mobile USA, Inc. ("T-Mobile").

2.    Plaintiff seeks relief in this action individually, and as a class action on behalf of all current and former non-business T-Mobile wireless service subscribers within the United States who did not contract for text messaging value bundles and who have been improperly

CLASS ACTION COMPLAINT - 1
Case No.

**ORIGINAL**

001993-11 203103 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  charged and paid text-messaging fees that they did not owe and did not solicit or initiate
2  ("Class").

3       3.      Defendant publishes rate plans, which advertise a fixed monthly charge for voice
4  and data services. Defendant's rate plans specify what additional charges, if any, the customers
5  will incur if they exceed the allotted minutes or data amount under the selected rate plan.

6       4.      With respect to text messaging charges, however, Defendant failed, and continues
7  to fail, to clearly and conspicuously disclose to customers that text messaging is an additional
8  mandatory service for which Plaintiff and the Class will incur separate and additional charges.

9       5.      Defendant also fails to clearly and conspicuously disclose to Plaintiff and
10  members of the Class that, unlike cellular telephone calls, they cannot reasonably avoid being
11  charged for unwanted text messages by not opening or responding to text messages, turning off
12  their phones, or by shutting off the text-messaging function. Thus, once Plaintiff and members
13  of the Class enter into a contract with the Defendant, customers are exposed to unavoidable and
14  unlimited text messaging charges that, given the proliferation of unsolicited messages, can
15  become a material amount of additional charges on a monthly basis. Plaintiff and members of
16  the Class are unable to discontinue their wireless services without incurring an early termination
17  fee, usually in the amount of $200.

18       6.      T-Mobile's unfair and deceptive practices violate Washington's Consumer
19  Protection Act, are a breach of T-Mobile's contract with its subscribers, and has unjustly
20  enriched the Defendant. Plaintiff and the Class have been harmed by Defendant's charging and
21  collecting fees from Plaintiff and those similarly situated for Defendant's mandatory text
22  messaging service to which Plaintiff and Class members did not agree.

23                          **II.    JURISDICTION AND VENUE**

24       7.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C.
25  § 1332(d)(2), the Class Action Fairness Act of 2005, and has supplemental jurisdiction pursuant
26  to 28 U.S.C. § 1367.

CLASS ACTION COMPLAINT - 2
Case No.

001993-11 203103 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendant, T-Mobile, is headquartered and has its principle place of business in this District, a substantial number of the acts and practices complained of herein occurred in this District, agreements that are the subject of this Complaint were entered into in part in this District and Defendant has received substantial compensation as a result of its acts and practices in this District.

9.      Unless permanently restrained and enjoined by this Court, the Defendant will continue to engage in the acts and practices alleged in this Complaint in this District.

### III.    PARTIES

10.     Plaintiff Marco Zaldivar ("Zaldivar") is a resident of San Luis Obispo County, California.  Plaintiff Zaldivar entered into a contract with Defendant for wireless services in approximately May or June of 2006.

11.     Defendant T-Mobile USA, Inc. is the United States operating entity of T-Mobile International AG & Co., the mobile communications subsidiary of Deutsche Telekom AG & Co. K.G.  T-Mobile USA, Inc's headquarters and principle place of business in the United States is in Bellevue, Washington, in the County of King, State of Washington.  Defendant T-Mobile has almost 27 million wireless customers in the United States, of which approximately 84% are under contract with T-Mobile.  Defendant's standardized marketing materials, conceptualized and drafted in Washington, are disseminated to subscribers, and consumers in general, from over 5,700 T-Mobile retail locations throughout the United States.

### IV.    STATEMENT OF FACTS

12.     T-Mobile markets and sells wireless telephone service through standardized wireless service plans at various retail locations, online sales and over the telephone.  Under each of the wireless service plans, subscribers are sold an allotment of minutes or airtime that they can use each month to make or receive phone calls.  The number of airtime minutes allocated to each customer is set according to the particular plan to which the customer subscribes.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1      13.    In addition to the standard voice function of a telephone, current cellular phones

2    can support many additional non-voice services such as short message service for text

3    messaging, e-mail, packet switching for access to the Internet, and multimedia messaging service

4    for sending and receiving photos and video.

5      14.    Without clear and conspicuous disclosure, or an express agreement, Defendant's

6    service includes a mandatory text messaging function for all users, for which subscribers will

7    incur an additional per message charge.  Defendant charges subscribers for both the receipt and

8    the sending of text messages.  A T-Mobile subscriber is also charged for the receipt of a text

9    message even if the unwanted text message is never read.

10      15.    Unlike cellular telephone calls, text messages cannot be rejected or dismissed by

11    the recipient.  A T-Mobile subscriber cannot avoid text messaging charges by turning off his or

12    her cellular telephone.  If a subscriber turns off his or her phone, the text message is then simply

13    queued until the subscriber turns his or her phone back on.  At that point, T-Mobile delivers the

14    queued message and a subscriber is charged.

15      16.    T-Mobile subscribers are unable to turn off the text-messaging function

16    completely.  According to T-Mobile, the "text messaging feature on . . . [a subscriber's] account

17    is a mandatory feature and cannot be removed due to system requirements."  On information and

18    belief, other major carriers such as Verizon Wireless, Sprint Nextel Corporation, AT&T Inc. and

19    Alltel Corporation, all allow their subscribers to turn off the text messaging function in its

20    entirety, to avoid incurring unwanted charges.

21      17.    T-Mobile's marketing and sales materials do not clearly and conspicuously

22    disclose that subscribers will be charged extra fees for the mandatory text messaging function.

23    In marketing and sales material available in T-Mobile's stores, entitled "Pricing – All of our

24    services and costs, all in one place," T-Mobile lists the name and features of individual or

25    "family" (multi-line) wireless plans, including (a) the number of "whenever" minutes available,

26    (b) the number of weekend and night minutes available, (c) the number of minutes to the five

CLASS ACTION COMPLAINT - 4
Case No.

001993-11 203103 V1

**HB**
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

Case 2:07-cv-01695-RAJ   Document 1   Filed 10/19/07   Page 5 of 16

1 people identified by their subscriber as his or her "favorites," and (d) the monthly cost for the
2 plan.

3      18.    T-Mobile's online sales and marketing materials similarly do not disclose that
4 subscribers will be charged extra fees for the mandatory text messaging function. The online
5 sales and marketing materials list the name and features of the individual or "family" (multi-line)
6 wireless plans, including (a) the number of "whenever" minutes available, (b) the number of
7 weekend and night minutes available, (c) the number of minutes to the five people identified by
8 that subscriber as his or her "favorites," and (d) the monthly cost for the plan.

9      19.    Both T-Mobile's online and in-store sales and marketing materials describe
10 T-Mobile's text messaging function as a separate optional service with a separate charge. For
11 example, T-Mobile's in-store materials list as a possible addition to any individual plan, "a
12 domestic Messaging Value Bundle for as little as $4.99/month."

13      20.    T-Mobile fails to disclose or discloses in a deceptive manner that the text
14 messaging feature is a mandatory feature of T-Mobile's service that cannot be turned off, and for
15 which the subscriber will incur a charge (generally between $0.10 - $0.15) for every message
16 sent or received, even if the subscriber declines to purchase an additional messaging service plan.

17      21.    Once a subscriber has entered into a contract with the Defendant, he or she has no
18 choice but to continue the receipt of text messages. The vast majority of wireless service plans
19 offered by Defendant require that customers enter into a two (2) year contract with the
20 Defendant. If a customer decides to terminate his or her contract with Defendant prior to the
21 expiration of the two (2) year period, subscribers are required, as a term and condition of the
22 contract, to pay an early termination fee of $200 per telephone number, regardless of the reason
23 for which the customer is cancelling. Alternatively, a customer must continue paying for the
24 unwanted service until the expiration of the contract term – incurring unlimited charges for text
25 messages.

26

CLASS ACTION COMPLAINT - 5
Case No.

001993-11 203103 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

22.     Defendant's wireless service agreements are distributed on a standard form printed contract. Defendant's form contract was prepared by the Defendant and presented to Plaintiff and Class members on a "take it or leave it" basis. No individual consumer or Class member is able to separately negotiate or modify any term of the agreement with the Defendant. Rather, subscribers may only adhere to the contract or reject it. Rather, subscribers may only adhere to the proposed contract or reject it.

23.     No true equality of bargaining power exists between the Defendant and any individual consumer or Class member. This unequal bargaining power precludes any individual from enjoying a meaningful opportunity to negotiate and choose the terms of the contract.

24.     By its policies and practices, including its deceptive conduct alleged herein, Defendant is cheating large numbers of customers out of individually small amounts of money. In doing so, Defendant attempts to effectively eliminate redress for its illegal conduct by inserting unconscionable terms into its boilerplate adhesion contracts, such as arbitration clauses that purport to bar class actions entirely. Such terms, if enforced, frustrate Washington State's policy favoring aggregation of small claims for purposes of efficiency, deterrence, and access to justice and thereby injures Plaintiff Zaldivar and the public.

25.     In or about June 2005, Plaintiff Zaldivar entered into a two year service agreement with the Defendant. The agreement was for service on four wireless telephones, for Plaintiff Zaldivar, his wife and his two children. Plaintiff Zaldivar's initial service contract included a charge for text messaging; he was informed he could immediately cancel this charge by calling T-Mobile. Plaintiff Zaldivar called T-Mobile in order to cancel any subscription for text messaging. Plaintiff Zaldivar understood that by cancelling the initial text messaging service, he would no longer be charged for the unwanted text messaging service on his telephones.

26.     At the time he agreed to wireless service with the Defendant, Plaintiff Zaldivar was not aware that text messaging was a mandatory feature of his service with T-Mobile.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

Plaintiff Zaldivar believed that text messaging was a separate service, which was not a part of Plaintiff's contract with Defendant. Had Plaintiff Zaldivar been fully informed that text messaging was a mandatory provision of the contract with T-Mobile that could not be shut-off, Plaintiff Zaldivar would have acted differently in his purchasing decision.

27. In or around September 2007, Plaintiff Zaldivar received a bill from T-Mobile that included charges for text messages on his children's phones. On information and belief, a number of those charges were for unsolicited advertisements to which Plaintiff Zaldivar did not agree. Plaintiff has accordingly been charged, and has paid, fees for the receipt of unwanted text messages, and has been harmed thereby.

28. Plaintiff Zaldivar continues to be subject to unwanted text message charges, despite repeated requests to T-Mobile to disable the text messaging feature on his service. T-Mobile has refused to discontinue the text messaging service. Plaintiff Zaldivar is unable to cancel his contract with the Defendant without significant financial penalty, due to the early termination fees in T-Mobile's wireless service agreement.

29. Plaintiff is not the only T-Mobile customer to be surprised by charges for unwanted text messages. Set forth below is a sample of complaints found on the internet:

> Posted By: JNOEL on 1/8/2006
>
> Location: Lapeer, MI
>
> I was charged sometimes $9 & $10 per text messages for messages I did not want or even read. I downloaded a ringer from T-Mobile and the the company that created the ringer has a deal with T-Mobile where they can send me text messages, charge T-Mobile and then T-Mobile charges me.
>
> For almost 6 months I have been asking T-Mobile to help me stop the text messages. I was told that they we[re] unaware of who the company was and that they could not de-activate my text messaging feature. So whether I read the messages or not I was being charged for every one. I finally got the number to this company called m-Qube and they confirmed that they have an agreement with T-Mobile and T-Mobile is their biggest customer. T-Mobile regulates and gives them authorization to send the messages. I have been lied to and taken advantage of for months



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

now and I want to cancel my service. I should be to cancel without incurring a cancellation fee. I will not conduct business with a company I cannot trust.

http://www.my3cents.com/showReview.cgi?id=11921

30.    Other complaints found on the internet state:

This is particularly bad for T-Mobile customers. T-Mobile frequently sends "company alert" text messages to all its customers. And unlike most other services, T-Mobile will refuse to cancel text messaging on your account.

"T-Mobile keeps billing me for incoming text messages," William of Mt. Morris, Mich. wrote. "I have no control over these and shouldn't be billed for them. One message was from a third party selling something. Another was from T-Mobile. I called, but they won't take the charges off. Furthermore, they refused to block text messaging on my account."

The great majority of ConsumerAffairs.Com complaints are from parents whose children decided to use text messaging or scour the Internet from their cell phone.

"We purchased a plan for our daughter who was entering college," Charlene of Greenville, Miss. wrote. "When the first bill came it was for over $600. The text messaging option is the main means of communication for my daughter. We had been charged for each incoming and outgoing text message – 10 cents per message."

Belkis of New York is a single mother with two children. In April her children browsed the Internet and downloaded a ringtone with her cell phone. Her bill was $80 higher than normal that month.

Shelly Ng of Illinois, who says she was recently hit by text spam, was shocked when her seemingly simple request was rejected by a T-Mobile customer service representative.

"I asked them to turn off my texting capability because I don't text. They refused, claiming that their technology does not allow them to do so," Ng said.

Even worse, the agent then tried to sell her on a text message plan for $4.95 per month. "I got so mad," she said.

Ultimately, T-Mobile gave her 15 free messages as a credit toward future spam. But the basic problem remains: Ultimately, Ng will again be charged 15 cents apiece for messages she doesn't want.


HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

31.    T-Mobile representatives admit that this practice occurs:

> David Henderson, a T-Mobile spokesman, confirmed that
> T-Mobile users cannot turn off texting for technical reasons.
>
> ***"The text messaging feature on your account is actually a
> mandatory feature and cannot be removed," he said. "This
> feature is needed because it's where voice mail and billing
> notifications are delivered."***
>
> Henderson said the problem of text spam is minimal because
> T-Mobile uses sophisticated spam software and allows consumers
> to add their own text filters on T-Mobile's Web site. The recent
> Fredericks spam, for example, didn't reach T-Mobile customers,
> he said. [Emphasis added.]

## V.    CLASS ACTION ALLEGATIONS

32.    Pursuant to Rule 23(b)(1), (2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff Zaldivar brings this class action on his own behalf and as a representative of a Class of similarly situated consumers who were all subjected to Defendant's unlawful practices.

33.    Plaintiff Zaldivar seeks to represent a Class of T-Mobile subscribers defined as:

> All current and former non-business T-Mobile wireless service
> subscribers within the United States who did not contract for text
> messaging value bundles and who have been improperly charged
> and paid text messaging fees that they did not owe.

Excluded from the Class are Defendant, its employees, any entities in which Defendant has a controlling interest, its legal representatives, heirs, successors and assigns.

34.    Numerosity of the Classes: The Class is composed of thousands of persons who subscribe to T-Mobile, the joinder of which in one action would be impracticable. The disposition of these claims through this class action will benefit the parties and the Court. The identities of individual members of the Class are ascertainable through Defendant's business records.

35.    Existence and Predominance of Common Questions of Fact and Law: There is a well-defined community of interest in the questions of law and fact involved affecting the



1    members of the Class. The questions of law and fact common to the Class predominate over

2    questions affecting only individual Class members, and include, but are not limited to, the

3    following:

4            (a)     the nature of Defendant's practices and policies concerning text

5    messaging;

6            (b)     whether Defendant's practices concerning text messaging violate

7    Washington's consumer protection laws;

8            (c)     whether Defendant's practices concerning text messaging are a breach of

9    contract with Plaintiff and Class members;

10           (d)     whether Defendant has been unjustly enriched through its practices and

11   policies concerning text messages;

12           (e)     whether Plaintiff and Class members are entitled to restitution of all

13   amounts acquired by Defendant resulting from its unlawful practices;

14           (f)     whether Plaintiff and Class members are entitled to recover actual and/or

15   compensatory damages as a result of Defendant's unlawful practices; and

16           (g)     whether Plaintiff and Class members are entitled to an award of

17   reasonable attorneys' fees, prejudgment interest, and costs of this suit.

18      36.     Typicality: Having been a victim of Defendant's unlawful business practices,

19   Plaintiff is asserting claims typical of the Class he seeks to represent. Plaintiff and all members

20   of the Class, have similarly suffered harm arising from Defendant's violations of law, as alleged

21   herein.

22      37.     Adequacy of Representation: Plaintiff is an adequate representative of the Class

23   because his interests do not conflict with the interests of the Class members he seeks to

24   represent. Plaintiff will fairly and adequately represent and protect the interests of the Class

25   because his interests are not antagonistic to that of the Class. Plaintiff has retained counsel who

26   are competent and experienced in prosecution of class action litigation.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1        38.    Superiority: The class action is superior to other available means for the fair and

2    efficient adjudication of Plaintiff's and Class members' claims and no unusual difficulties are

3    likely to be encountered in the management of this class action. Plaintiff and the members of the

4    Class have suffered irreparable harm as a result of Defendant's unfair and unlawful conduct.

5    Because of the size of the individual Class members' claims, few, if any, Class members could

6    afford to seek legal redress for the wrongs complained of herein. Absent the class action, the

7    members of the Class will continue to suffer losses. Moreover, the violations of law described

8    herein will continue without remedy, and Defendant will be permitted to retain the proceeds of

9    its misdeeds. Defendant continues to deny wrongdoing and to engage in the unlawful and unfair

10   conduct as described in this Complaint.

11       39.    This action is also properly certified under the provisions of Federal Rule of Civil

12   Procedure 23(b)(1), 23(b)(2), and/or 23(b)(3) because:

13           (a)    The prosecution of separate actions by individual members of the Class

14   would create a risk of inconsistent or varying adjudications with respect to individual Class

15   members, thus establishing incompatible standards of conduct for Defendant's activities;

16           (b)    Due to the nature of the relief sought, the prosecution of separate actions

17   by individual members of the Class would create a risk of adjudications with respect to them that

18   would, as a practical matter, be dispositive of the interests of the other members of the Class not

19   parties to such adjudications or would substantially impair or impede the ability of such members

20   of the Class to protect their interests; and

21           (c)    By failing to make the written disclosures required by applicable laws or

22   by improperly charging Plaintiff and the Class fees for text messaging, Defendants have acted or

23   refused to act in respects generally applicable to the Class, thereby making appropriate final

24   injunctive relief with regard to the members of the Class as a whole in terms of the nature of the

25   relief sought.

26

CLASS ACTION COMPLAINT - 11
Case No.

001993-11 203103 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1

2

## COUNT I

## BREACH OF CONTRACT

3      40.    Plaintiff and the Class incorporate by reference the preceding paragraphs as if

4   fully set forth herein.

5      41.    Plaintiff and the members of the Class entered into a contract both express and

6   implied with the Defendant.  The Defendant offered to provide wireless phone service in

7   consideration of payment for services from the Plaintiff and the Class.  Under the terms of the

8   agreement, Plaintiff and the members of the Class were required to pay in full the agreed-to

9   charges submitted to them on their bills.  Failure to pay in full would result in a breach of

10   contract and discontinuance of wireless telephone service, accrued interest and a cancellation fee.

11      42.    Plaintiff and the members of the Class accepted the offer of services from the

12   Defendant and performed their portion of the contract.

13      43.    The express and implied terms of the contract were that the Defendant would only

14   charge the contractually agreed-upon charges.

15      44.    Defendant has charged Plaintiff and members of the Class for text messaging to

16   which the Plaintiff and members of the Class did not agree, in breach of their contract.

17      45.    Plaintiff and the Class did not voluntarily pay these charges.  Once a contract was

18   agreed to between Plaintiff, the Class and the Defendant, Plaintiff and the Class had no means by

19   which to prevent these charges.  Each contract between the Defendant and Class members

20   requires either a one or two year commitment by the Plaintiff or the Class member.  Defendant's

21   standardized contract imposes a $200 termination fee for any consumer who terminates their

22   service with Defendant prior to the expiration of the agreement, regardless of the reason.

23      46.    The Defendant breached its contract with Plaintiff and Class members by

24   improperly charging and collecting fees for text messaging, to which Plaintiff and the Class did

25   not agree.

26



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1      47.    As a direct and proximate result of the Defendant's breach of contract, the

2  Plaintiff and the members of the Class have suffered monetary damages in an amount to be

3  proven at the time of trial.

4  <center>**COUNT II**</center>

5  <center>**VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT**</center>

6      48.    Plaintiff and the Class incorporate by reference the preceding paragraphs as if

7  fully set forth herein.

8      49.    The Washington Consumer Protection Act, RCW 19.86.010, *et seq.* applies to

9  protect all consumers in other states because the false and/or deceptive acts or practices

10  originated and were carried out in Defendant's corporate headquarters, located in Bellevue,

11  Washington.

12      50.    The Defendant violated the Washington Consumer Protection Act, RCW

13  19.86.010, *et seq.*, by engaging in the following false and deceptive trade practices:

14      (a)    Falsely advertising a rate plan that Defendant did not honor;

15      (b)    Deceptively advertising and inducing Plaintiff and the Class to sign up for

16  a rate plan that the Defendant did not honor;

17      (c)    Billing Plaintiff and the Class for text messaging charges to which they

18  did not agree;

19      (d)    Failing to properly notify or advise Plaintiff and the Class that they were

20  not contractually liable to pay certain fees for text messaging;

21      (e)    Failing to notify the Plaintiff and the Class of their right to terminate the

22  contract without penalty due to Defendant's breach;

23      (f)    Failing to properly notify and advise the Plaintiff and the Class of their

24  right to reimbursement for improper charges;

25      (g)    Failing to reimburse the Plaintiff and the Class promptly for improper text

26  messaging charges collected; and



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    (h)    Retaining money unlawfully collected from Plaintiff and the Class and

2    thereby defrauding Plaintiff and the Class.

3    51.    Defendant intended for Plaintiff and the Class to rely on Defendant's advertising

4    and inducements and select its wireless service.

5    52.    Defendant intended for Plaintiff and the Class to be deceived by Defendant's

6    failure to disclose that text messaging was a mandatory service for which Plaintiff and the Class

7    would incur a separate charge. Defendant also intended that Plaintiff and the Class would be

8    deceived and would promptly pay the wrongful charges.

9    53.    Plaintiff and the Class in fact relied upon the Defendant's advertisements and

10   inducements and selected Defendant's wireless services.  Plaintiff and the Class relied upon

11   Defendant's false and deceptive notices and billing statements and paid the unlawful charges to

12   Defendant.

13   54.    Defendant is guilty of violating Washington's Consumer Protection Act, as the

14   unfair and deceptive acts or practices in the conduct of any trade or commerce and unlawful

15   under RCW 19.86.020.

16   55.    As a direct and proximate result of the Defendant's false and deceptive

17   advertising, inducements, notices and billing statements, the Plaintiff and the members of the

18   Class were damaged.

19   56.    The false and deceptive advertising, inducements, notices and billing statements

20   occurred in the course of business and commerce, as the Defendant is in the business of

21   providing wireless telephone services to Plaintiff and the members of the Class.  The

22   Defendant's conduct is a part of a pattern or generalized course of conduct repeated on thousands

23   of occasions.

24   57.    The above-described false and deceptive trade practices affect the public interest

25   and have the potential for continuation and repetition, adversely affecting the public interest

26   unless redressed.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

## COUNT III

### UNJUST ENRICHMENT

58.     Plaintiff and the Class incorporate by reference the preceding paragraphs as if fully set forth herein.

59.     By charging Plaintiff and members of the Class fees based on text messages to which Plaintiff and members of the Class did not agree, and which Plaintiff and members of the Class could not avoid once they became subscribers on Defendant's network, Defendant is retaining money which, in justice and equity, belongs to Plaintiff and members of the Class.

60.     Defendant has accordingly been unjustly enriched in these amounts, and must return them to Plaintiff and the Class.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and on behalf of the Class, pray:

A.     For an order certifying the Class, and appointing Plaintiff and their undersigned counsel of record to represent the Class;

B.     For a permanent injunction enjoining Defendant, their partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with them directly or indirectly, or in any manner, from in any way engaging in the unfair practices set forth herein;

C.     For actual, compensatory damages and/or full restitution of all funds acquired from Defendant's unfair business practices;

D.     For treble, exemplary and/or punitive damages up to the maximum amount permitted by law;

E.     For the costs of suit herein;

F.     For punitive damages, to be awarded to Plaintiff and each Class member;

G.     For pre- and post-judgment interest on any amounts awarded;

H.     For payment of reasonable attorneys' fees, expert fees; and

CLASS ACTION COMPLAINT - 15
Case No.

001993-11 203103 V1

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

1    I.    For such other and further equitable or legal relief, which the Court may deem

2  proper.

3                          **DEMAND FOR JURY TRIAL**

4        Plaintiff hereby demands a trial by jury.

5  DATED: October 19, 2007

6                                    HAGENS BERMAN SOBOL SHAPIRO LLP

7

8                                    By_____
9                                    Steve w. Berman, WSBA #12536
                                     1301 Fifth Avenue, Suite 2900
10                                   Seattle, WA 98101
                                     Telephone: (206) 623-7292
11                                   Facsimile: (206) 623-0594
                                     steve@hbsslaw.com
12

13                                   Reed R. Kathrein
                                     Jeff D. Friedman
14                                   Shana E. Scarlett
                                     HAGENS BERMAN SOBOL SHAPIRO LLP
15                                   715 Hearst Avenue, Suite 202
                                     Berkeley, CA  94710
16                                   Telephone: (510) 725-3000
                                     Facsimile: (510) 725-3001
17                                   reed@hbsslaw.com
                                     jefff@hbsslaw.com
18                                   shanas@hbsslaw.com

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 16
Case No.

001993-11 203103 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 ■ FACSIMILE (206) 623-0594