UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCO ZALDIVAR, et al.,

    Plaintiffs,

v.

T-MOBILE USA, INC.,

    Defendant.

CASE NO. C07-1695 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the parties' joint motion (Dkt. # 161) for preliminary approval of a class action settlement. For the reasons stated herein, the court lacks sufficient information to resolve the motion. The parties must make additional submissions in compliance with this order. The clerk shall RENOTE the motion for August 14, 2009.

## II. BACKGROUND

The operative complaint (Dkt. # 137) describes Plaintiffs' claims, all of which surround the text message billing practices of Defendant T-Mobile USA, Inc. ("T-Mobile"). Both Marco Zaldivar and Robert Burress entered wireless phone service agreements with T-Mobile. Neither of them was ultimately interested in paying for plans that provided for an unlimited or fixed number of text messages for a monthly fee

ORDER – 1

("bundled plans"). T-Mobile did not, however, disclose to them that they could not disable the text messaging function entirely. Thus, they were unaware that they would be charged per-message fees for text messages that they received, regardless of whether they wanted those messages. Some of their claims arise from T-Mobile's failure to disclose that they could not disable text messaging or that they would be charged for unwanted text messages. Other claims arise from the fact that they were charged for, and T-Mobile collected money for, text messages that they did not want.

The court stayed this action at the request of the parties beginning in January 2009 so that they could pursue settlement discussions. By that time, the parties had completed substantial discovery, and the court had resolved numerous pretrial motions. The fruit of the parties' pretrial efforts and settlement discussions is summarized in the motion before the court and in the parties' Stipulation of Settlement ("Settlement Agreement") (Dkt. # 160). The parties ask the court to preliminarily approve the settlement on behalf of a nationwide class of almost 5 million current and former T-Mobile customers.

If the court approves the settlement, T-Mobile will undertake various acts to provide prospective relief to class members. First, beginning in July 2008, T-Mobile implemented technology that enables it to disable text messaging on customers' phones. The settlement would require T-Mobile to retain this capability for two years, to disclose to customers that the capability is available, to train its customer service agents regarding the capability, and to modify its marketing such that customers are aware of the capability. Settlement Agreement ¶¶ 4(a)-(g). In addition, T-Mobile would provide credits to customers who complain about "spam" text messages. *Id.* ¶ 4(d).

Class members would receive no damage payments in the settlement. T-Mobile would make a $200,000 *cy pres* payment to the Mobile Giving Foundation, a charitable organization. In exchange for this payment and the prospective relief described above, class members would release all of their claims against T-Mobile arising from T-

ORDER – 2

Mobile's failure to disclose that text messaging was mandatory and for damages arising from unwanted text messages.

To avoid the cost of providing formal notice to each class member, the parties propose alternative notice consisting of inserts in bills of T-Mobile customers as well as notices in two national newspapers. All printed notices will refer customers to a website with more detailed information on the settlement.

The settlement permits class counsel to seek attorney fees and costs before final approval, but for no more than $725,000. T-Mobile has agreed not to oppose any attorney fee request at or below that limit.

With that sketch of the settlement, the court proceeds to an analysis of the preliminary approval motion.

### III.  ANALYSIS

The parties' agreement to settle this matter is not itself a sufficient basis for approving the settlement. The settlement would require the court to certify a class and dispose of the claims of its members. The court has an independent obligation to protect class members. *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). Even for a class certified solely for purposes of settlement, the court must ensure that the class and its proposed representative meet the requirements of Fed. R. Civ. P. 23. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In addition, the court must ensure that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The court agrees with the parties that the settlement class meets the four prerequisites of Rule 23(a). The proposed class has nearly five million members nationwide, and is therefore sufficiently numerous that joinder of individual members is impracticable. Fed. R. Civ. P. 23(a)(1). T-Mobile's text message billing practices are uniform nationwide, and thus present numerous common questions of law and fact. Fed. R. Civ. P. 23(a)(2). Mr. Zaldivar and Mr. Burress have claims that are typical of all class members: they did not receive adequate disclosure about the mandatory text messaging

ORDER – 3

feature, and they paid for unwanted texts. Fed. R. Civ. P. 23(a)(3). Finally, Mr. Zaldivar and Mr. Burress have demonstrated their ability to adequately protect the interests of absent class members. Fed. R. Civ. P. 23(a)(4).

The court also has no objection to naming interim class counsel as counsel for the settlement class, or the parties' agreement to limit attorney fees and costs to $725,000. The court does not, however, suggest that it will award that sum, or that it has in any way relaxed class counsel's obligation to adequately support whatever fee award it requests in a proper motion. The court also has no objection to nominal incentive awards of $2000 and $1000 to Mr. Zaldivar and Mr. Burress, respectively.

Other aspects of the proposed settlement, however, raise questions about its fairness to class members, both in terms of the substantive fairness of the settlement and the adequacy of the parties' proposed disclosures to class members. First, the settlement would award no relief whatsoever to a subset of the class – all former T-Mobile customers who were aggrieved by the challenged practices. The parties have not revealed the size of this subset, addressed whether this subset should be part of the class, expressly disclosed that this subset would receive no relief, or proposed adequate notice to this subset. In addition, the parties have not adequately disclosed that all class members would give up damage claims or disclosed an estimate of damages to the class. This and other omissions from the disclosures make them inadequate to permit class members to make an informed decision on whether to opt out of the class. They also prevent the court from assessing the fairness of the settlement.

The court's concerns begin with the parties' proposed class definition:

> All current and former T-Mobile subscribers in the United States who are or were parties to a contract for a wireless telephone personal account and who never sent a text message but received, were charged for and paid for text messages while not on a rate plan or value bundle plan that included a fixed or unlimited number of text messages per month, any time during the period October 1, 2003 to the present.

ORDER – 4

The inclusion of former T-Mobile subscribers in the class is suspect in a settlement that is unlikely to provide most of them with notice and provides relief to none of them. Former T-Mobile subscribers will gain no benefit from the prospective relief to which T-Mobile has agreed. They (like all other class members) will give up any claim to damages. Worse, former T-Mobile customers are the class members least likely to receive notice of the class settlement. They will not receive any mailed communication from T-Mobile, and thus will be bound by a settlement of which they had no notice unless they are fortunate enough to read the notices in two national newspapers or happen upon the website describing the settlement. Under these circumstances, the court queries whether it is appropriate to include former subscribers in the settlement class. In addition, the parties have not disclosed how many former T-Mobile subscribers there are among the five million class members. The court cannot assess the fairness of the settlement without knowing how many members of the class will receive nothing under the settlement. The parties must address these concerns, and must consider whether to exclude former subscribers from the settlement class, or, at a minimum, consider a means of providing better notice to former subscribers. The parties' materials in support of the instant motion suggest that T-Mobile is capable of identifying and segregating its former subscribers from the rest of the class. If so, the parties should explain why they cannot provide direct notice to former subscribers in the settlement class.

The class definition is tailored to Plaintiffs' complaint, but not tailored to the parties' analysis of their settlement. The court has no quarrel with excluding from the class people who have sent text messages while not on a bundled text message plan, because a customer who sends a text message at least arguably demonstrates that he or she is not interested in disabling text messaging. Plaintiffs do not claim that it was unlawful for T-Mobile to charge for text messages that customers did not want, merely that it was unlawful to do so for customers who would have disabled text messaging entirely if they were permitted to do so, or who would have chosen another wireless

ORDER – 5

provider if they had known they could not disable text messaging. In assessing the potential damages of class members, however, it appears that the parties have introduced additional limitations that are not consistent with Plaintiffs' claims or the class definition.

T-Mobile hired a consultant to examine its records to estimate the collective damage to the class. He determined that, during the class period, just under five million T-Mobile customers who did not send any text messages were charged for text messages they received while they were not on a bundled text message plan. Krueger Decl. ¶ 20. Through October 2008, those class members paid almost $6 million for text messages. Yet through a series of assumptions, the consultant arrived at the estimate that only about one percent of this amount (approximately $65,000) constitutes damage to class members. *Id.* ¶ 37.

Some of the assumptions that the consultant made in arriving at his damage estimate do not trouble the court. He eliminated charges for text messages that T-Mobile wrote off as bad debt. *Id.* ¶ 22. He eliminated charges that T-Mobile waived, credited, or refunded. *Id.* ¶ 23. He also eliminated charges for subscribers who declined to leave T-Mobile after their contracts expired (either by affirmatively renewing their contracts or by declining to terminate service). *Id.* ¶¶ 27-28. In the parties' view, these customers indicated by staying with T-Mobile when they had no contractual obligation to do so that they had no objection to the challenged T-Mobile text message billing practices. Lastly, T-Mobile eliminated charges for class members who had signed up for third-party services that automatically sent them text messages, although they do not disclose how they identified such class members. *Id.* ¶ 36.

Other assumptions, however, are either inappropriate or require further explanation. The consultant eliminated $1.8 million in damages by excluding charges to any customer who had ever subscribed to a bundled text message plan during the class period. *Id.* ¶ 24. The parties argue that a customer who was on a bundled plan was "aware of the text messaging functionality, as well as the corresponding charges." *Id.* It

ORDER – 6

is not at all obvious, however, why a customer's "awareness" matters. For a customer who began service on per-message billing, there is no reason to assume that his later choice to switch to a bundled plan indicates his approval of being billed for unwanted text messages before the switch. For a customer who switches to per-message billing *after* being on a bundled plan, there is no reason to assume that that customer assented to being billed for unwanted text messages, even if he was "aware of the text messaging functionality." A customer need not be ignorant of text messaging in general to believe that if he does not subscribe to a text-messaging plan, he will not be billed for unwanted messages. The same is true of the consultant's exclusion of all charges to customers who had multiple T-Mobile accounts and had bundled text plans on some of them. *Id.* ¶ 25. Just because a customer is willing to pay for unwanted text messages on one account does not mean that he or she has assented to do so on another account. Yet the consultant excluded almost $700,000 based on this assumption. Equally perplexing is the consultant's assumption that anyone who had significant numbers of text messages must have assented to paying for unwanted messages. *Id.* ¶ 26. The consultant also excluded text messages that came from numbers of persons with whom a customer had communicated in voice calls. *Id.* ¶ 34. Again, the court finds no basis for this assumption. A text message is no more or less wanted because it comes from someone who knows the recipient of the message. A person aggrieved by being unable to disable text messages is no more damaged by an unwanted text message from a stranger than by an unwanted text message from his mother. Also unexplained is the consultant's exclusion of charges from all subscribers who received many text messages from the same telephone number over time. *Id.* ¶ 35. Unwanted text messages do not inevitably transform to desired text messages merely because the sender is persistent.

    In raw numbers, the consultant's questionable assumptions account for more than half of his reduction of class damages from $6,000,000 to $65,000. The raw numbers reveal little, however, because the consultant's reductions in damages for each category

ORDER – 7

depend on the number of class members excluded in other categories. No class member was counted in more than one of the categories created by his assumptions, so the exclusion of some of those assumptions would affect the number of class members excluded by other assumptions. In short, the court lacks a reliable estimate of the amount of damages sustained by the class.

The damages assumptions, however, are only the beginning of the problem. There is no "magic number" for a damages estimate under which the settlement will be satisfactory, but the number is important to both the court and class members. Class members will receive no damages. This may be a reasonable outcome in light of numerous factors in the case, but an important factor to consider is how much class members are giving up. This is important to the court's assessment of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The settlement looks quite different at the two extremes of the parties' damage analysis. If class members really accrued only $65,000 in damages, then T-Mobile's would seem to be generous in paying nearly a million dollars in cash considerations in addition to prospective relief. If damages are in the range of $6 million, the settlement seems a bargain for T-Mobile, and perhaps a poor bargain for class members. Regardless, the court needs a better damages estimate, as do class members who must decide whether to opt out of the class.

The parties have not disclosed any estimate of damages in their proposed notices to class members. This disclosure is important for two reasons. First, as noted above, it would help class members assess whether to opt out of the settlement class. Second, it would highlight to class members something that is barely mentioned in the class notice: every class member who joins the settlement as it is currently structured will forfeit the right to claim damages. The parties' proposed notices disclose this only in a nearly impenetrable paragraph describing what class members will give up in the settlement. Settlement Agreement, Ex. B at 7 ¶ 12. Although the court declines at this point to

ORDER – 8

dictate the terms of the proposed class notice, the court suggests at a minimum that class members be informed in plain English that they are giving up the right to seek damages and that they will receive no monetary relief in the settlement. As the notice is currently constructed, the court finds it unlikely that any person not trained in the law would have any idea what he or she was sacrificing for the settlement.

The parties attempt to diminish the importance of notice by suggesting that the court can certify this class under Rule 23(b)(2), which permits certification of classes where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate." Notice to class members is optional for a Rule 23(b)(2) class. Fed. R. Civ. P. 23(c)(2)(A). The court has concerns over whether this action can properly be considered a Rule 23(b)(2) class. Although the primary relief that the settlement would award is at least arguably injunctive, there is no suggestion that T-Mobile has agreed to have an injunction imposed against it. There is no question, moreover, that every class member is being asked to give up any claim to damages arising from T-Mobile's challenged conduct. Under these circumstances, it seems just as apt to characterize the settlement class as one that is being asked to accept a damages award of zero in exchange for prospective relief that cannot, as would be the case with a permanent injunction, be enforced in a contempt proceeding. Regardless of how the parties characterize the settlement class, the court will not permit it to be certified without adequate notice.[1]

The parties must also elaborate on one portion of the prospective relief they propose. The settlement would require T-Mobile to "authorize customer care representatives to credit customers who receive spam text messages." Settlement Agreement ¶ 4(d)(i). The parties use the same phrase when describing the prospective

---

[1] As to *current* T-Mobile subscribers, the court has no objection to the parties' proposal to accomplish notice via an insert in their monthly bills. This method is well crafted to minimize the costs of notice. The court has already discussed its concerns about the parties' planned notice to former subscribers. *See supra* at 4-5.

ORDER – 9

relief in their long-form class notice. Settlement Agreement, Ex. B at 4. It is not clear, however, what a "spam text message" is. Does any unsolicited text message qualify, or only some narrower set of text messages. If a customer complains of a "spam text message," will T-Mobile have discretion to refuse to credit the customer for it? Does the credit policy apply only to "spam text messages" received after the approval of the settlement, or does it apply to "spam text messages" at any point during the class period extending through the end of the injunction? This question is of particular importance, because a customer who seeks compensation for charges for unwanted text messages may base a decision on whether to opt out of the class based on the availability of credit.

The parties must address the concerns raised in this order in a supplement to their motion for preliminary approval, and must do so no later than August 14, 2009. To the extent the parties choose to revise their settlement agreement or one or more of their proposed notices to the class, they should submit those revisions along with the supplement.

## IV. CONCLUSION

For the reasons stated above, the court directs the parties to supplement their preliminary approval motion in accordance with this order no later than August 14, 2009. The clerk shall renote the parties' preliminary approval motion (Dkt. # 161) for August 14, 2009.

IT IS SO ORDERED.

DATED this 10th day of July, 2009.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 10