THE HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7     UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
                                    AT SEATTLE
8

9     MARCO ZALDIVAR and ROBERT ERIC
      BURRESS, on Behalf of Themselves and          No. 07-cv-1695 RAJ
10    Others Similarly Situated,

11                                 Plaintiffs,       MOTION FOR AWARD OF
                                                     ATTORNEYS' FEES AND FOR
12          v.                                       REIMBURSEMENT OF EXPENSES

13    T-MOBILE USA, INC.,                            NOTE ON MOTION CALENDAR:
                                                     March 5, 2010 at 10:30 a.m.
14                                 Defendant.

15

16

17

18

19

20

21

22

23

24

25

26



# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   ARGUMENT .......................................................................................................3

      A.    The Requested Fee Is Separate and in Addition to the Substantial Benefits
            Obtained for the Class.................................................................................3

            1.    Negotiated Attorneys' Fee Agreements Are Favored in Class
                  Action Settlements...........................................................................4

            2.    The Agreed-Upon Fee Carries a Presumption of Reasonableness ..............5

      B.    The Lodestar Method Supports Counsel's Application for an Award of
            Attorneys' Fees ..........................................................................................6

            1.    Class Counsel Expended Significant Time and Labor on Behalf of
                  the Class .......................................................................................8

            2.    This Litigation Involved Novel and Difficult Questions of Law and
                  Fact............................................................................................10

            3.    The Litigation Required Significant Skill to Properly Perform the
                  Required Legal Services .................................................................11

            4.    Class Counsel Was Precluded from Accepting Other Employment..........12

            5.    The Multiplier Requested by Counsel Is Below the Customary Fee
                  Range Awarded in the Ninth Circuit .................................................13

            6.    Class Counsel Represented Plaintiffs and the Class on a
                  Contingent Basis ..........................................................................13

            7.    The Amount Involved and the Results Obtained.....................................14

            8.    The Experience, Reputation, and Ability of the Attorneys......................14

            9.    The Fees Requested by Class Counsel Are Within the Range of
                  Awards in Similar Cases .................................................................15

      C.    Class Counsel's Reasonable Expenses Incurred as a Result of Litigation
            Are Also Compensable ...............................................................................15

      D.    The Class Representatives Should Receive Participant Awards for
            Vindicating the Rights of the Class ..............................................................16

III.  CONCLUSION ..................................................................................................17



001993-11 350653 V1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrams v. Lightolier Inc.*
    50 F.3d 1204 (3d Cir. 1995).................................................................16

*Arenson v. Board of Trade*
    372 F. Supp. 1349 (N.D. Ill. 1974) .................................................13

*Behrens v. Wometco Enterprises Inc.*
    118 F.R.D. 534 (S.D. Fla. 1988) .................................................13

*Bezio v. General Electric Co.*
    2009 U.S. Dist. LEXIS 68721 (N.D.N.Y Aug. 5, 2009) ...................................6

*Biancur v. Hickey*
    1997 U.S. Dist. LEXIS 21516 (N.D. Cal. Nov. 19, 1997)...........................17

*Bratcher v. Bray-Doyle Independent School District Number 42*
    8 F.3d 722 (10th Cir. 1993) .................................................16

*Cavalieri v. General Electric Co.*
    2009 U.S. Dist. LEXIS 68693 (N.D.N.Y Aug. 5, 2009) ...................................6

*In re Cenco, Inc. Sec. Litigation*
    519 F. Supp. 322 (N.D. Ill. 1981) .................................................13

*In re Combustion, Inc.*
    968 F. Supp. 1116 (W.D. La. 1997).................................................13

*In re Continental Ill. Sec. Litigation*
    962 F.2d 566 (7th Cir. 1992) .................................................4, 5

*In re Equity Funding Corp. Sec. Litigation*
    438 F. Supp. 1303 (C.D. Cal. 1977) .................................................12

*In re First Capital Holdings Corp. Finance Products Sec. Litigation*
    1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ...........................4, 6

*Grays Harbor Adventist Christian School v. Carrier Corp.*
    2008 U.S. Dist. LEXIS 106515 (W.D. Wash. Apr. 24, 2008).......................15

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .................................................6, 7

*Harris v. Marhoefer*
    24 F.3d 16 (9th Cir. 1994) .................................................15, 16



*Hensley v. Eckerhart*
   461 U.S. 424 (1983) ...............................................................................................4, 14

*In re Heritage Bond Litigation*
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ...............................................12

*Hughes v. Microsoft Corp.*
   2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ...........................................17

*In re Immunex Sec. Litigation*
   864 F. Supp. 142 (W.D. Wash. 1994) ...........................................................................17

*Johnson v. Ga. Highway Express, Inc.*
   488 F.2d 714 (5th Cir. 1974) ...........................................................................................4

*Kerr v. Screen Extras Guild, Inc.*
   526 F.2d 67 (9th Cir. 1975) .............................................................................................7

*Lobatz v. U.S. West Cellular of Cal., Inc.*
   222 F.3d 1142 (9th Cir. 2000) .........................................................................................4

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*
   671 F. Supp. 819 (D. Mass. 1987) ...................................................................................4

*In re M.D.C. Holdings Sec. Litigation*
   1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) ................................................4

*Malchman v. Davis*
   761 F.2d 893 (2d Cir. 1985) .............................................................................................4

*Maley v. Del Global Technologies Corp.*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................13

*McBean v. City of New York*
   233 F.R.D. 377 (S.D.N.Y. 2006) ..................................................................................5, 6

*In re Mego Finance Corp. Sec. Litigation*
   213 F.3d 454 (9th Cir. 2000) .........................................................................................17

*Mills v. Electric Automobile-Lite Co.*
   396 U.S. 375 (1970) .........................................................................................................7

*Miltland Raleigh-Durham v. Myers*
   840 F. Supp. 235 (S.D.N.Y. 1992)..................................................................................16

*In re NASDAQ Market-Makers Antitrust Litigation*
   187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................................13

*Pelletz v. Weyerhaeuser Co.*
   592 F. Supp. 2d 1322 (W.D. Wash. 2009).......................................................................15



*Rabin v. Concord Assets Group*
    1991 U.S. Dist LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) ...............................13

*In re RJR Nabisco Sec. Litigation*
    1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ............................13

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ..............................................................7

*In re Sumitomo Copper Litigation*
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)...................................................13

*Van Vraken v. Atl. Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ...............................................13, 17

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ................................................7, 10, 13

*In re Washington Public Power Supply System Sec. Litigation*
    19 F.3d 1291 (9th Cir. 1994) ...............................................................9

*Wing v. Asarco Inc.*
    114 F.3d 986 (9th Cir. 1997) ..............................................................7

## DOCKETED CASES

*In re Northwest Biotherapeutics Inc. Securities Litigation*
    Case No. C07-1254-RAJ (W.D. Wash.) ...........................................15



715 Hearst Avenue, Suite 202, Berkeley, California  94710
Telephone: (510) 725-3000 • Facsimile: (510) 725-3001

# I.   PRELIMINARY STATEMENT

Class Counsel respectfully request that the Court award $688,770.45 in attorneys' fees and $36,229.55 in expenses to Class Counsel for a total of $725,000.[1]  As set forth more fully herein, the requested fee is reasonable and Defendant T-Mobile USA, Inc. ("T-Mobile") has agreed to pay this amount separate and apart from the other terms of the settlement.

The settlement in this case requires the Defendant to implement broad prospective relief, including the ability of class members to block the text messaging function on their mobile phones.  Settlement Ag. at 6.  And in fact over one million customers have taken advantage of this service.  In addition, T-Mobile has agreed to increased disclosures at the point of sale regarding their text messaging policies, increased training for customer care representatives, and a credit policy for customers allowing for the reimbursement of charges due to spam text messaging.  *Id.* at 7.  T-Mobile has also agreed to make a charitable contribution of $200,000 to a *cy pres* beneficiary.  *Id.* at 5.

The substantial benefits obtained for the Settlement Class were achieved solely through the skill, work, tenacity and effective advocacy of Class Counsel.  Class Counsel spent over 1,853 hours on the litigation, which included hundreds of hours of research, communications with class members, and consultation with database experts regarding customer call records and the call histories of class members.  If the Court measures the reasonableness of the requested fees under the lodestar method, which the Ninth Circuit has stated is appropriate in class actions involving significant prospective relief, the requested fee of $688,770.45 is less than Class Counsel's lodestar.  This fee represents a negative multiplier of 0.91.  This negative multiplier means that Class Counsel is being compensated at approximately 91% of their usual billing rates, well below the range of multipliers commonly approved by courts within the Ninth Circuit.

---

[1]   Unless otherwise indicated, all terms used herein shall have the same meaning as set forth in the Stipulation of Settlement Pursuant to Fed. R. Civ. P. 23 ("Settlement Agreement" or "Settlement Ag.") (filed June 5, 2009, Ct. Rec. 160).



The prosecution and settlement of this litigation required skill and extensive investigative efforts by Class Counsel.  Class Counsel marshaled considerable resources and committed substantial amounts of time to research, investigation and uncovering detailed and highly technical facts.  Class Counsel challenged the technological capabilities of T-Mobile's wireless network – the ability to block text messages while allowing voice calls to continue on to subscribers – something that Defendant T-Mobile claimed was impossible prior to the filing of this litigation.  Friedman Decl., ¶ 16.[2]  In addition, Class Counsel vigorously pursued the feasibility of using Defendant's call usage history for each class member – over 10 terabytes of information for one month of detail call usage data – to demonstrate based on a caller's behavioral patterns, whether a text message was "unwanted."  *Id.*, ¶ 17

Class Counsel undertook the representation of the class on a contingent-fee basis, and no payment has been made to Class Counsel to date for their services or for the litigation expenses they have advanced on behalf of the class.  Class Counsel believe that the settlement is the result of their diligent and expert work over the course of more than 27 months, their unwavering dedication to the interests of the class, and their reputations as attorneys who are unafraid and able to zealously prosecute a meritorious case through trial and subsequent appeals.  In a case asserting claims based on complex legal and factual issues that were vigorously opposed by highly-skilled and experienced defense counsel, Class Counsel succeeded in securing an excellent result for the class.  As a result, Class Counsel submit that the requested fee is fair and reasonable and should be awarded by this Court.

The class does not appear to disagree.  In accordance with this Court's Preliminary Approval Order, notice of the class action, proposed settlement agreement and final fairness

---

[2]   "Friedman Decl." refers to the Declaration of Jeff D. Friedman in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, filed concurrently herewith.



1    hearing was mailed to over 1.7 million class members.[3]  In addition, notice was published in two

2    national newspapers.  The notice described the litigation and potential settlement, as well as

3    Class Counsel's intent to request an award of attorneys' fees and expenses not to exceed

4    $725,000.  The notice also informed class members of their right to object to the settlement or

5    this fee application.  The deadline for objections has now passed, and there has been just one

6    objection to Class Counsel's request for attorneys' fees.[4]  This single objection is compelling

7    evidence that Class Counsel's fee request is fair and should be granted.

8         As set forth herein, the requested fee is fair and reasonable when considered under the

9    applicable standards in the Ninth Circuit.  The fee is well within the range of awards in class

10   actions in this Circuit and courts nationwide, particularly in view of the substantial risks of

11   bringing and pursuing this litigation, the extensive investigative and litigation efforts and the

12   results achieved for the Settlement Classes.  Additionally, the requested expenses are reasonable

13   in amount and were necessarily incurred for the successful prosecution of this litigation.

## II.    ARGUMENT

### A.    The Requested Fee Is Separate and in Addition to the Substantial Benefits Obtained for the Class

16        T-Mobile has agreed to pay Plaintiffs' attorneys' fees and expenses, up to $725,000,

17   subject to this Court's approval.  Settlement Ag. at 8.  This provision was negotiated separately,

18   at arm's-length, with the assistance and oversight of an experienced mediator, the Honorable

19   Michael S. Spearman (Ret.), a member of the King County Superior Court bench for 14 years,

20   and only after the material terms of the settlement had been agreed upon.  Friedman Decl., ¶ 24.

21

22        [3] "Preliminary Approval Order" refers to the Order Granting Provisional Certification of
23   Settlement Class and Preliminary Approval of Class Action Settlement Agreement (filed Sept. 4,
     2009, Ct. Rec. 167).

24        [4] The deadline for objections was January 23, 2010.  In total, Class Counsel received five
     purported objections to the settlement.  Only one of these objections, made by Ms. Margaret
25   Sargent Lozar (filed Jan. 19, 2010, Ct. Rec. 174), referenced Class Counsel's fee request.
     Responses to these objections can be found in Plaintiffs' Motion for Final Approval of Class
26   Action Settlement, filed concurrently herewith.



715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA  94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

001993-11  350653 V1

Courts favor such negotiated agreements because they accurately reflect a market rate for counsel's services. *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992).[5] Moreover, an agreed-upon fee carries a presumption of reasonableness. *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992).

### 1. Negotiated Attorneys' Fee Agreements Are Favored in Class Action Settlements

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).[6]

In affirming the award of a negotiated fee, the Second Circuit has observed:

> [W]here . . . the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

---

[5]   All internal citations and quotations omitted and all emphasis added, unless otherwise indicated.

[6]   *See also In re M.D.C. Holdings Sec. Litig.*, No. 89-0090, 1990 U.S. Dist. LEXIS 15488, at *12 (S.D. Cal. Aug. 30, 1990) ("[b]ecause this Court believes the parties should be encouraged to settle all their disputes as part of the settlement . . . , including the amount of the fee, . . . if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement"); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").



1   *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985).[7]

2         The virtue of a fee negotiated by the parties at arm's-length is that it is, in effect, a

3   market-set price.  Defendants have an interest in minimizing the fee; plaintiffs have an interest in

4   maximizing it; and the negotiations are informed by the parties' knowledge of the work done and

5   result achieved and their views on what the court might award if the matter were litigated.  In *In*

6   *re Cont'l Ill*., Judge Posner endorsed a market-based approach to evaluating fee requests.  "[I]t is

7   not the function of judges in fee litigation to determine the equivalent of the medieval just price.

8   It is to determine what the lawyer would receive if he were selling his services in the market

9   rather than being paid by court order."  *In re Cont'l Ill*., 962 F.2d at 568.  Judge Posner explained

10   that "[t]he object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would

11   have gotten in the way of a fee in an arms' length negotiation, had one been feasible."  *Id*. at 572.

12   Here, such a negotiation was feasible and was conducted.

         2.       **The Agreed-Upon Fee Carries a Presumption of Reasonableness**

13

14         Because attorneys' fees were separately negotiated, T-Mobile had a vested interest in

15   how much money was paid to Class Counsel.  T-Mobile sought to minimize the fees it would

16   pay in addition to the benefits it would give the class.  Class Counsel sought to receive full

17   compensation, as the law encourages, for undertaking this litigation on a contingent basis and

18   devoting the resources and skill necessary to bring it to a prompt and successful conclusion.

19         As Judge Lynch explained in *McBean v. City of New York*, a court need not review an

20   application for attorneys' fees with a heightened level of scrutiny where, as here, the parties have

21   contracted for an award of fees that will not be paid from a common fund.  *McBean v. City of*

22   *New York*, 233 F.R.D. 377 (S.D.N.Y. 2006).  "If money paid to the attorneys comes from a

23   common fund, and is therefore money taken from the class," he reasoned, "then the Court must

24

25         [7]   *See also Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000)
     (affirming award of fees and expenses, where defendant has agreed not to oppose request for fees
26   and expenses up to negotiated ceiling, which was paid separately from class settlement benefits).

HB   HAGENS BERMAN

715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA  94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

001993-11  350653 V1

carefully review the award to protect the interests of the absent class members." *Id*. at 392.  If, however, the attorneys' fees are "entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *Id*.  Judge Lynch concluded that the parties' agreement for attorneys' fees in *McBean* was objectively reasonable because it was the product of arm's-length negotiations.  *Id*.[8]

In the present case, T-Mobile has agreed to pay an award of attorneys' fees and expenses of $725,000 independent of the benefits to the class.  Settlement Ag., at 8.  The negotiation of this settlement was overseen by not one, but two experienced mediators, the Honorable Roselle Pekelis (Ret.) and the Honorable Michael Spearman (Ret.), both of Judicial Dispute Resolution, LLC.[9]  Moreover, the fee was negotiated at arm's-length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the class and the magnitude of the fee the Court might award if the matter were litigated.  Thus, the negotiated fee is entitled to a presumption of reasonableness.

## B.      The Lodestar Method Supports Counsel's Application for an Award of Attorneys' Fees

Over ten years ago in *Hanlon*, the Ninth Circuit approved the use of the lodestar method in class action settlements where injunctive relief is a major component, as there is often "no

---

[8]    *See also First Capital Holdings,* 1992 U.S. Dist. LEXIS 14337, at *13 ("Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation."), *appeal dismissed for lack of standing*, 33 F.3d 29 (9th Cir. 1994); *Bezio v. Gen. Elec. Co.*, No. 06cv381, 2009 U.S. Dist. LEXIS 68721, at *11 (N.D.N.Y Aug. 5, 2009) ("If money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members."); *Cavalieri v. Gen. Elec. Co.*, No. 06cv315, 2009 U.S. Dist. LEXIS 68693, at *11 (N.D.N.Y Aug. 5, 2009) (same).

[9]    Judge Pekelis is a retired judge of the Washington Supreme Court and Judge Spearman was a member of the King County Superior Court bench for 14 years.  A copy of Judge Pekelis's and Judge Spearman's résumés are attached as exhibits to the Friedman Declaration.  Friedman Decl., Exs. D-E.



1   way to gauge the net value of the settlement or any percentage thereof" with great reliability.

2   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  The Ninth Circuit since *Hanlon*

3   has repeatedly approved a trial court's discretion to choose the lodestar method to calculate

4   attorneys' fees where the injunctive relief component of the settlement would make valuation

5   difficult.[10]

6        A trial court retains the discretion to utilize either a percentage or the lodestar method to

7   calculate attorneys' fees even in "'common-fund' cases where the settlement or award creates a

8   large fund for distribution to the class." *Hanlon*, 150 F.3d at 1029.  This case, however, is more

9   analogous to the common benefit doctrine, where "the litigation has conferred a substantial

10  benefit on the members of an ascertainable class." *See Mills v. Elec. Auto-Lite Co.,* 396 U.S.

11  375, 393-94 (1970).

12       Lodestar calculations begin with the multiplication of the number of hours reasonably

13  expended by a reasonable hourly rate. *See Hanlon*, 150 F.3d at 1029.  The Ninth Circuit has

14  enumerated factors to consider in determining the appropriateness of a fee using the lodestar

15  method, instructing trial courts to consider:

16               (1) the time and labor required, (2) the novelty and difficulty of the
                 questions involved, (3) the skill requisite to perform the legal
17               service properly, (4) the preclusion of other employment by the
                 attorney due to acceptance of the case, (5) the customary fee, (6)
18               whether the fee is fixed or contingent, (7) time limitations imposed
                 by the client or the circumstances, (8) the amount involved and the
19               results obtained, (9) the experience, reputation, and ability of the
                 attorneys, (10) the 'undesirability' of the case, (11) the nature and
20               length of the professional relationship with the client, and (12)
                 awards in similar cases.
21
22  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Hanlon*, 150 F.3d at

    1029.[11]
23

24  _____

         [10]  *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 974 n.23 (9th Cir. 2003); *Wing v. Asarco
    Inc.*, 114 F.3d 986, 990 (9th Cir. 1997).

25       [11]  Several of the factors, including the time limitations imposed by the client, the
    undesirability of the litigation and the nature and length of the professional relationship with the
26  client are not relevant here, and therefore, Class Counsel does not address these factors.

MOT. FOR ATTYS' FEES AND EXPENSES – 7
Case No. 07-cv-1695 RAJ



715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA 94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

Here, approval of the requested fee will not result in an excessive multiplier and falls near the lower-end of multipliers reflected in the *Vizcaino* Court's survey. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002). As discussed below, applying the relative factors to this case – including the contingent nature of the fee, the risks of litigation, and the results achieved – all support the award of the requested fee.

### 1.     Class Counsel Expended Significant Time and Labor on Behalf of the Class

With this motion, Class Counsel submits detailed time records for this Court's review. *See* Friedman Decl., Ex. A. In total, Class Counsel expended over 1853 hours in litigating this action. This time was reasonably expended, given the hard-fought nature of this case. A review of the pleadings and discovery undertaken in the case demonstrates not only the contentious nature of this litigation, but also the necessity of the work undertaken by Class Counsel in defending the interests of the class.

From the inception of this case, Class Counsel expended dozens of hours investigating and developing the factual record necessary to file a class action complaint. Soon after the complaint was filed, T-Mobile unleashed a barrage of motions seeking to have this action dismissed, stayed or otherwise removed from this forum. Within the first eight months alone, Defendant T-Mobile filed a motion to compel arbitration of the named plaintiff's claims, a motion to stay the litigation, a motion to dismiss and a motion to strike the nationwide class allegations.[12] Class Counsel vigorously opposed each of these motions and was, in each instance, successful.[13]

---

[12]   *See* T-Mobile USA, Inc.'s Motion to Compel Arbitration and Stay Case (filed Dec. 14, 2007 Ct. Rec. 12); T-Mobile's Motion, in the Alternative, to Dismiss Pursuant to Rules 9(b) and 12(b)(6) (filed Mar. 27, 2008, Ct. Rec. 37); Motion to Strike Nationwide Class Allegations or to Require Plaintiff to Provide Case Management Plan (filed May 22, 2008, Ct. Rec. 53).

[13]   *See* Order [Denying Motion to Compel Arbitration] (filed May 2, 2008, Ct. Rec. 47); Order [Denying Motion to Strike Class Allegations] (filed June 19, 2008, Ct. Rec. 79); Order [Denying Motion to Dismiss] (filed July 15, 2008, Ct. Rec. 104).

MOT. FOR ATTYS' FEES AND EXPENSES – 8
Case No. 07-cv-1695 RAJ



715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA 94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

001993-11  350653 V1

Discovery in this case was similarly contentious and hard fought. Plaintiffs moved to compel further discovery responses from T-Mobile three times, largely meeting with success.[14] Defendant T-Mobile itself moved for a protective order, which Plaintiffs opposed, and which this Court denied.[15] In addition, the parties heavily disputed Defendant's right to take the deposition of Plaintiff Zaldivar's family – his wife and two minor children.[16] This Court eventually ordered that these depositions should proceed, although Defendant dramatically limited the scope of documents requested from these third parties during the course of the motion practice. In addition, given the numerous discovery disputes, Plaintiffs also moved for relief from the Court's scheduling order and for leave to propound additional interrogatories on Defendant T-Mobile, which this Court granted.[17]

At the time settlement discussions began in earnest, Plaintiffs were on the eve of filing a motion for class certification. Class Counsel had already spent a significant amount of time researching, litigating and strategizing about their class certification strategy for what was sure to be a heavily-disputed motion. Friedman Decl., ¶ 10.

Based on this record – the large number of motions to limit the pleadings and stay this litigation instituted by Defendant T-Mobile, and the necessity of multiple motions to compel to require T-Mobile to comply with its discovery obligations under the Federal Rules of Civil

---

[14] *See* Motion to Compel Responses to Plaintiff's First Set of Requests for Production of Documents and Special Interrogatories (filed May 20, 2008, Ct. Rec. 49); CR 37 Joint Submission Regarding Request for Admission No. 6 and Interrogatory No. 6 (filed Sept. 18, 2008, Ct. Rec. 120); Plaintiffs' Motion to Compel Sampling of Class Members' Call Detail Records (filed Dec. 31, 2008, Ct. Rec. 145). *See also* Order (Aug. 12, 2008, Ct. Rec. 115); Order (Sept. 30, 2008, Ct. Rec. 132).

[15] *See* T-Mobile's Motion for a Protective Order Limiting Discovery (filed May 27, 2008, Ct. Rec. 54). *See also* Opposition to T-Mobile's Motion for a Protective Order Limiting Discovery (filed June 2, 2008, Ct. Rec. 63); Order (filed June 19, 2008, Ct. Rec. 79).

[16] *See* Motion to Quash, or in the Alternative, for a Protective Order Regarding Subpoenas to Marjorie, Melissa and Thomas Zaldivar (filed July 2, 2008, Ct. Rec. 81); Motion for a Protective Order Regarding Subpoenas to Marjorie, Melissa and Thomas Zaldivar (filed Sept. 19, 2008, Ct. Rec. 125).

[17] *See* Motion for Relief from Scheduling Order and to Propound Additional Special Interrogatories (filed July 9, 2008, Ct. Rec. 88); Order (filed Aug. 12, 2008, Ct. Rec. 115).

MOT. FOR ATTYS' FEES AND EXPENSES – 9
Case No. 07-cv-1695 RAJ



715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA 94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

1   Procedure – Class Counsel has expended a reasonable amount of time and labor on behalf of the

2   class.

3       **2.      This Litigation Involved Novel and Difficult Questions of Law and Fact**

4           Numerous cases have recognized that risk as well as novelty and difficulty of issues

5   presented are important factors in determining a fee award.  *See, e.g., Vizcaino*, 290 F.3d at

6   1048; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1301 (9th Cir. 1994).

7   The Ninth Circuit in *Vizcaino* observed that "attorneys whose compensation depends on their

8   winning the case must make up in compensation in the cases they win for the lack of

9   compensation in the cases they lose."  *Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65).

10  Substantial risks and uncertainties in this litigation made it far from certain that any recovery, let

11  alone remedial measures and contribution to a *cy pres* recovery fund, would ultimately be

12  obtained.

13          Plaintiffs' case centered on the mandatory nature of T-Mobile's text messaging services

14  and the fact that Defendant was the sole major wireless provider that did not allow subscribers to

15  turn off the text messaging function in its entirety, thus allowing subscribers to avoid incurring

16  unwanted charges.  FAC, ¶ 18.[18]  Plaintiffs alleged that Defendant failed to disclose that its text

17  messaging service was a mandatory function that could not be turned-off and for which

18  subscribers would incur unavoidable charges.  Class Counsel believes that while Plaintiffs

19  presented a strong case against T-Mobile, litigation posed and would continue to pose substantial

20  risks at various stages of the litigation.

21          The case was technically and factually complex.  Identifying class members and

22  assessing each class member's damages would have required individually identifying the more

23  than 17 million T-Mobile subscribers that did not have a messaging value bundle during the class

24  period; searching for and extracting monthly bill images for more than four years for each of the

25

26  _____
    [18]   "FAC" refers to the First Amended Complaint (filed Oct. 31, 2008, Ct. Rec. 137).

HB  HAGENS BERMAN

715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA  94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

17 million subscribers, with each record being an average of six pages in length.[19]  Class Counsel retained and conferred extensively with experts in database construction and maintenance. Understanding the complex architecture of Defendant's database took hundreds of hours of research and investigation.  Class Counsel reviewed dozens of Internet websites and blogs, reviewed relevant case law, interviewed industry experts and participants, deposed multiple corporate deponents pursuant to Federal Rule of Civil Procedure Rule 30(b)(6) and engaged the services of highly-competent and experienced technical and industry consultants.  Friedman Decl., ¶¶ 17-18.

In addition to the technical and factual complexities, the case presented substantial legal challenges.  Among the challenges were the following:

- Demonstrating that T-Mobile's choice-of-law provision – inserted into every consumer contract – did not preclude certification of a nationwide class;

- Demonstrating that T-Mobile's arbitration clause did not prevent the maintenance of class actions in certain states; and

- Demonstrating that certain text messages were "unwanted" through subscriber's call detail records and other subscriber behavior.

Friedman Decl., ¶ 19.

Given the legal and factual issues involved, the hard-fought nature of discovery and the almost certain appeal of any verdict adverse to T-Mobile, as well as T-Mobile's vigorous denial of any wrongdoing, it is quite possible that a jury may have sided with Defendant and the class would have recovered nothing.  Thus, the novelty and difficulty of the questions presented in this action plainly supports the fee requested.

### 3.    The Litigation Required Significant Skill to Properly Perform the Required Legal Services

The successful prosecution of these complex claims required the work of highly-skilled and specialized attorneys.  From the outset, Class Counsel engaged in a concerted effort to obtain

---

[19]    *See* Plaintiffs' Motion to Compel Sampling of Class Members' Call Detail Records at 4 (filed Dec. 31, 2008, Ct. Rec. 145).



HAGENS BERMAN

715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA 94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

001993-11 350653 V1

the maximum recovery for the class.  This case required a determined investigation and the skill to handle a host of complex legal and factual issues.  Class Counsel's work on this case was tenacious and skilled, which is ultimately reflected in the excellent result.

Class Counsel demonstrated that they could and would develop the technical and factual expertise to assemble the evidence necessary to support a convincing case.  Class Counsel marshaled considerable resources and devoted significant time to the researching, investigating and uncovering of facts.  Class Counsel spent a significant amount of time researching and drafting the complaints, defeating T-Mobile's motion to dismiss, motion to compel arbitration, and motion to stay and motion to strike the class allegations.  In addition, Class Counsel devoted substantial time to mastering the relevant facts to make effective arguments on the merits and negotiate a settlement that included significant remedial measures to address blocking text messages and adequate disclosure of T-Mobile's policies at the point of sale.  Friedman Decl., ¶ 36.

The quality of opposing counsel is also important in evaluating the quality of work done by Class Counsel.[20]  Plaintiffs were opposed in this litigation by very skilled and highly-respected counsel from Stokes Lawrence, P.S., a law firm with a well-deserved reputation for vigorous and smart advocacy in the defense of complex civil cases such as this case.  Faced with this impressive opposition, Class Counsel was able to develop Plaintiffs' case so as to persuade T-Mobile to implement significant prospective relief for class members.

**4.      Class Counsel Was Precluded from Accepting Other Employment**

Hagens Berman Sobol Shapiro LLP ("Hagens Berman") maintains a very active contingent fee practice.  Every week, Hagens Berman ordinarily receives multiple requests for representation, new case inquiries, and offers to associate with other lawyers and law firms to

---

[20]   *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Heritage Bond Litig.*, No. MDL 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) (same).

HB  HAGENS BERMAN

715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA  94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

prosecute complex and class action cases.  Friedman Decl., ¶ 37.  The amount of time and resources devoted to this litigation, as reflected in the accompanying timesheets, required the firm to forego other, potentially lucrative, employment.  *Id.*  This factor supports the award of attorneys' fees requested here.

### 5.   The Multiplier Requested by Counsel Is Below the Customary Fee Range Awarded in the Ninth Circuit

Class Counsel is requesting a fee award that represents only 91% of its lodestar.  *Id.*, Ex. A.  This means that the requested award is less than Class Counsel's time expended multiplied by their reasonable billing rates.  Negative multipliers, such as that being applied here, are unusual and federal courts routinely approve much larger multipliers in complex litigation matters and in class action proceedings.  *See Vizcaino*, 290 F.3d at 1051 n.6 (surveying class actions settlements nationwide, and noting 54% of lodestar multipliers fell within the 1.5 to 3.0 range, and that 83% of multipliers fell within the 1.0 to 4.0 range).[21]  In light of the range of multipliers commonly approved by courts within the Ninth Circuit, the fee request by Class Counsel is reasonable.

### 6.   Class Counsel Represented Plaintiffs and the Class on a Contingent Basis

The fee agreements between Plaintiffs and Class Counsel provided for a contingent fee recovery.  That is, Class Counsel had no assurance of recovering expenses or attorneys' fees in

---

[21]   *See also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (3.97 multiplier:  "'In recent years multipliers of between 3 and 4.5 have become common.'"); *In re RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 U.S. Dist. LEXIS 12702, at *15-*23 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (2.5 multiplier); *In re Combustion, Inc.,* 968 F. Supp. 1116 (W.D. La. 1997) (percentage-based fee representing 3 times lodestar); *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier); *Rabin v. Concord Assets Group*, No. 89 Civ 6130, 1991 U.S. Dist LEXIS 18273, at *4 (S.D.N.Y. Dec. 19, 1991) (4.4 multiplier: "multipliers of between 3 and 4.5 have been common"); *Behrens v. Wometco Enters. Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988) ("[T]he range of lodestar multiples in large and complicated class actions runs from a low of 2.26 to a high of 4.5."); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 327 (N.D. Ill. 1981) (4.0 multiplier); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1359 (N.D. Ill. 1974) (4.0 multiplier).

HB  HAGENS BERMAN

715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA 94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

001993-11  350653 V1

1    this case short of winning at trial or a settlement favorable to the class.  Despite this lack of

2    certainty, Class Counsel expended considerable time and resources to prosecute this case

3    successfully on behalf of the class.  Friedman Decl., ¶ 38.  This factor also supports Class

4    Counsel's request for fees.

5         **7.       The Amount Involved and the Results Obtained**

6         Courts have consistently recognized that the result achieved is a significant factor to be

7    considered in making a fee award.  *Hensley*, 461 U.S. at 436 ("most critical factor is the degree

8    of success obtained").  Here, the settlement provides for significant prospective relief and

9    remedial measures aimed at ameliorating the conditions which triggered the filing of this

10   litigation.  In addition to this prospective relief, T-Mobile has also agreed to a charitable

11   contribution of $200,000 to a *cy pres* fund.  Plaintiffs discuss, in detail, the results obtained in

12   their Motion for Final Approval of Class Action Settlement, filed concurrently herewith and the

13   Friedman Declaration.  Class Counsel does not repeat that discussion here.  But the broad

14   remedial corporate change that is the focal-point of the settlement agreement has achieved the

15   goals of this litigation and the named Plaintiffs.  Zaldivar Decl., ¶¶ 1-14; Burress Decl., ¶¶ 1-

16   15.[22]

17        **8.       The Experience, Reputation, and Ability of the Attorneys**

18        Hagens Berman is a nationally-recognized law firm, with offices in Seattle, Boston,

19   Chicago, Los Angeles, Phoenix and San Francisco.  Hagens Berman's practice focuses on

20   representing plaintiffs in securities, investment fraud, product liability, tort, antitrust, consumer

21   fraud, employment, environmental, and ERISA cases.  *See* Friedman Decl., Ex. B.  Class

22   Counsel submits its firm résumé to demonstrate some of the firm's experience in complex and

---

23        [22]  "Zaldivar Decl." refers to the Declaration of Marco Zaldivar in Support of Motion for

24   Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and
     Reimbursement of Expenses, filed concurrently herewith.  "Burress Decl." refers to the

25   Declaration of Robert Eric Burress in Support of Motion for Final Approval of Class Action
     Settlement and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, filed

26   concurrently herewith.



1   class action litigation.  *Id.*  Hagens Berman has been rated by the National Law Journal in the top

2   ten of plaintiffs' firms in the country.  The experience, reputation and ability of Class Counsel

3   support the request for an award of attorneys' fees.

### 9.   The Fees Requested by Class Counsel Are Within the Range of Awards in Similar Cases

5   The total lodestar amount (based on Hagens Berman's current rates) is $755,721.25.

6   Friedman Decl., Ex. A.   The firm's lodestar is based on the firm's customary rates.  *Id.*, ¶ 3.

7   The fee amount requested by Class Counsel is within the range of awards in similar cases in this

8   district.  For example, recently in *In re Northwest Biotherapeutics Inc. Securities Litig.*, Case No.

9   C07-1254-RAJ (W.D. Wash.), this Court approved a similar fee request from Hagens Berman

10   with similar hourly rates.  *See* Friedman Decl., Ex. C.  Other courts in this district have also

11   awarded fees within the range requested by Class Counsel here.  *See, e.g., Pelletz v.*

12   *Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1327 (W.D. Wash. 2009) (finding attorneys' hourly

13   rates of $305 to $800 reasonable); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No.

14   05-5437, 2008 U.S. Dist. LEXIS 106515 (W.D. Wash. Apr. 24, 2008) (same).  Given that the

15   fees requested by Class Counsel fall within the range of awards approved by both this Court and

16   others in this district, this factor also supports the award of attorneys' fees here.

### C.   Class Counsel's Reasonable Expenses Incurred as a Result of Litigation Are Also Compensable

19   Class Counsel also requests reimbursement for $36,229.55 for expenses incurred in

20   connection with the prosecution of this litigation.  Friedman Decl., Ex. A at 1.  Defendant T-

21   Mobile has agreed to pay up to $725,000 in fees and expenses, separately and not from any funds

22   awarded to the class.  The requested expenses are categorized in an exhibit to the Friedman

23   Declaration, submitted herewith.  *Id.*, Ex. A at 54-59.

24   The appropriate analysis to apply in deciding which expenses are compensable in a

25   common fund case of this type is whether the particular costs are the type typically billed by

26   attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.



1  1994) (allowing recovery of "out-of-pocket expenses that would normally be charged to a fee

2  paying client").  Therefore, it is proper to reimburse reasonable expenses even though they are

3  greater than taxable costs.  *Id.*[23]   The categories of expenses for which Class Counsel seek

4  reimbursement here are the type of expenses routinely charged to hourly clients and, therefore,

5  should be reimbursed here.

6         A significant component of Class Counsel's expenses is the cost of Plaintiffs'

7  consultants.  The consultants conducted a substantial amount of work on behalf of the class,

8  providing Class Counsel with invaluable assistance in understanding T-Mobile's electronically-

9  stored information, including the bills of class members.  Without this knowledge and

10 understanding, Class Counsel would not have been able to form the factual theories to support

11 Plaintiffs' legal claims and would not have been able to formulate the remedial measures

12 obtained in the settlement.

13        Another large component of Class Counsel's expenses are deposition transcripts, which

14 were each necessary to the prosecution of this action.  And finally, Class Counsel was also

15 required to travel in connection with hearings in this litigation and thus incurred the related costs

16 of meals, lodging and transportation.

17 **D.     The Class Representatives Should Receive Participant Awards for Vindicating the
           Rights of the Class**

18

19        The two named plaintiffs, Marco Zaldivar and Robert Eric Burress, are entitled to

20 participation awards of $2,000 and $1,000, respectively, as a reward for their dedication to the

21 class over the term of this litigation.  State and federal courts have recognized that the allowance

22

23        [23]   *See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir.
24 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier
   Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for
   them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1992) ("Attorneys
25 may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to
   their clients, as long as they were incidental and necessary to the representation of those
26 clients.").

MOT. FOR ATTYS' FEES AND EXPENSES – 16
Case No. 07-cv-1695 RAJ

HB  HAGENS BERMAN

1   of participation awards to plaintiffs in class actions advances the goals of federal statutes, and

2   have found it appropriate to reward named plaintiffs for the benefits they have conferred.[24]

3          Mr. Zaldivar and Mr. Burress, during the pendency of the litigation, responded to many

4   questions by Class Counsel, provided documentation regarding their injuries and experiences

5   with T-Mobile, responded to discovery and assisted in the development of the facts.  Friedman

6   Decl., ¶ 41.  For example, in response to T-Mobile's interrogatories, Mr. Zaldivar collected 420

7   telephone numbers from his various address books and contact files and Mr. Burress collected

8   and produced 127 telephone numbers.  *Id.*  In addition, not only was Mr. Zaldivar deposed in his

9   capacity as a class representative, but this Court also ordered that Mr. Zaldivar's family be

10  deposed, including his wife and two minor children.[25]  The two named Plaintiffs' active

11  participation was key to the success of this litigation.

12         Moreover, T-Mobile has acknowledged that its implementation of the text blocking

13  function on its systems was, in part, in response to customer complaints including those of

14  Plaintiff Zaldivar and Plaintiff Burress.  Settlement Ag. at 8.  The requested participation awards

15  are reasonable in light of the Plaintiffs' efforts in vindicating the rights of the class as a whole.

### III.    CONCLUSION

17         Class actions are complex and difficult to prosecute.  This was particularly so in this case,

18  because it involved sophisticated and complex technologies.  Class Counsel undertook a

19  significant risk by representing the class on a contingent-fee basis.  There are numerous

20  examples where plaintiffs' counsel in cases such as this, after the expenditure of thousands of

21  hours, have received no compensation whatsoever.  Onlookers often focus on the overall size of

---

22      [24]  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming
23  award of $5,000 to representatives); *In re Immunex Sec. Litig.*, 864 F. Supp. 142, 145 (W.D.
    Wash. 1994) (awarding $25,000 to eleven class representatives); *Hughes v. Microsoft Corp.*, No.
24  C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *36-*38 (W.D. Wash. Mar. 26, 2001) (approving
    awards of up to $65,000 per plaintiff); *Van Vraken*, 901 F. Supp. at 300 (approving award of
25  $50,000 to class representative); *Biancur v. Hickey*, No. 95-2149, 1997 U.S. Dist. LEXIS 21516,
    at *8 (N.D. Cal. Nov. 19, 1997) (award of $2,000 each to class representatives).

26      [25]  *See* Order (filed Nov. 24, 2008, Ct. Rec. 143).

MOT. FOR ATTYS' FEES AND EXPENSES – 17
Case No. 07-cv-1695 RAJ



001993-11  350653 V1

1  fees awarded, but fail to take into consideration the instances where huge investments in cases

2  are lost.  As demonstrated above, this litigation was hard fought and fraught with uncertainty and

3  risk.  Class Counsel was faced with determined adversaries represented by experienced and

4  equally determined counsel.  Without any assurance of success, Class Counsel pursued this

5  litigation to favorable conclusion.  The settlement represents an excellent recovery for the class

6  and stands as a testament to the skill, tenacity and dedication of Class Counsel.  Class Counsel

7  accordingly submits that the Court should approve the fee and expense application and award

8  Class Counsel attorneys' fees of $688,770.45 plus reimbursement of $36,229.55 in expenses.

9  DATED: February 12, 2010

10                                     HAGENS BERMAN SOBOL SHAPIRO LLP

11

12                                     By _____/s/ Jeff D. Friedman_____
                                          JEFF D. FRIEDMAN (*Pro hac vice*)

13
                                       Shana E. Scarlett (*Pro hac vice*)
14                                     715 Hearst Avenue, Suite 202
                                       Berkeley, CA  94710
15                                     Telephone: (510) 725-3000
                                       Facsimile: (510) 725-3001
16                                     jefff@hbsslaw.com
                                       shanas@hbsslaw.com
17

18                                     Steve W. Berman (12536)
                                       HAGENS BERMAN SOBOL SHAPIRO LLP
19                                     1918 Eighth Avenue, Suite 3300
                                       Seattle, WA  98101
20                                     Telephone: (206) 623-7292
                                       Facsimile: (206) 623-0594
21                                     steve@hbsslaw.com

22
                                       Class Counsel
23

24

25

26

MOT. FOR ATTYS' FEES AND EXPENSES – 18
Case No. 07-cv-1695 RAJ



715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA  94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

   I hereby certify that on February 12, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Jeff D. Friedman
_____
JEFF D. FRIEDMAN

MOT. FOR ATTYS' FEES AND EXPENSES – 19
Case No. 07-cv-1695 RAJ



715 HEARST AVENUE, SUITE 202, BERKELEY, CALIFORNIA 94710
TELEPHONE: (510) 725-3000 • FACSIMILE: (510) 725-3001

001993-11  350653 V1

# Mailing Information for a Case 2:07-cv-01695-RAJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Steve W. Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com,carrie@hbsslaw.com

- **Peter J Bezek**
  pbezek@foleybezek.com,jkassity@foleybezek.com,cconnors@foleybezek.com

- **Jeffrey D Friedman**
  jefff@hbsslaw.com

- **J Paul Gignac**
  j.paul@aogllp.com,kgrombacher@aogllp.com

- **Shelley Hall**
  smh@stokeslaw.com,tom.makey@stokeslaw.com,dll@stokeslaw.com

- **Karolyn Ann Hicks**
  kah@stokeslaw.com,gno@stokeslaw.com

- **Scott A.W. Johnson**
  sawj@stokeslaw.com,klc@stokeslaw.com,wah@stokeslaw.com

- **Reed R Kathrein**
  reed@hbsslaw.com,sf_filings@hbsslaw.com

- **Murray Lewis**
  lewislawseattle@yahoo.com,lewislawfirm@msn.com

- **Shana E Scarlett**
  shanas@hbsslaw.com,sf_filings@hbsslaw.com,jeneld@hbsslaw.com

- **Michael W Sobol**
  msobol@lchb.com

- **Barbra L Williams**
  bwilliams@lchb.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)